Filing # 209044558 E-Filed 10/17/2024 06:40:01 PM

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

| | |
|---|---|
| CONCEPCION DURAN, and ALDEN BRUTUS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> vs. <br><br> WALGREEN CO., WALGREENS BOOTS ALLIANCE, INC., WALGREEN PHARMACY SERVICES MIDWEST, LLC, GEORGIA LEHOCZKY, individually, NIVIA SANTIAGO, individually, and BRUEL FRANCOIS, individually <br><br> Defendants. | CIRCUIT CIVIL DIVISION <br><br> CASE NO.: *06-2024-CA-014989* |

**COMPLAINT**

Plaintiffs, CONCEPCION DURAN ("Duran") and ALDEN BRUTUS ("Brutus") (both collectively "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant, WALGREEN CO., ("Walgreen"); WALGREENS BOOTS ALLIANCE, INC. ("WBA")[1]; WALGREEN PHARMACY SERVICES MIDWEST, LLC ("WM"), GEORGIA LEHOCZKY ("Georgia"); NIVIA SANTIAGO ("Santiago"); and BRUEL FRANCOIS ("Francois")[2] and allege, on personal knowledge as to all facts related to themselves and upon information and belief as to all other matters, as follows:

**PRELIMINARY STATEMENT**

1) Walgreens is the largest retail drugstore chain in the United States based on both revenues and number of stores. Walgreens operates 9,277 retail pharmacies in all fifty states, the

---

[1] Walgreen, WBA and WM are collectively referred to as "Walgreens" or "Corporate Defendants"
[2] Francois, Santiago, and Georgia collectively referred to as the "Individual Defendants" & All Individual Defendants and Corporate Defendants are collectively referred to herein as "Employer" or "Defendants"

District of Columbia, Puerto Rico, and the U.S. Virgin Islands, including *820 drugstores in the state of Florida.* In fact, Walgreens refers to itself as "the largest retail pharmacy, health and daily living destination across the United States and Europe." Approximately 78 percent of the U.S. population lives within five miles of a Walgreens retail pharmacy location.

2) Walgreens' incredible success is the result of its primary business objective: to constantly increase profitability. By itself, there is nothing wrong with increasing profits. In fact, profitability is a cornerstone of all businesses. However, **Walgreens' desire to increase profits had no limits taking it down a path to lawlessness and immorality, including but not limited to:**

   a. DEA actions against Walgreens for unlawful conduct against the citizens of Florida taking advantage of the national opioid crisis to increase its profits.

      i. Walgreens paid $80 million dollars to settle the DEA actions for record keeping violations and unlawful diversion of opioids.

      ii. During the DEA investigations, Walgreens executives lied and hid and/or destroyed relevant evidence.

      iii. Ultimately, Walgreens did not comply with the terms of the DEA settlement agreement by failing to **"maintain a compliance program to detect and monitor diversion, including training its pharmacists on red flags for diversion..."** This included the refusal to keep accurate records and/or the falsifying of records.

   b. Walgreens' failure to comply with its DEA settlement led to the 2018 lawsuit captioned *State of Florida, Office of the Attorney General, Department of Legal Affairs v. Walgreens, et al., Case No. 2018-CA-001438* (the "Florida AG Action") **"asserting various claims against Walgreens for public nuisance, negligence, conspiracy, fraud, and violations of the Florida Deceptive and Unfair Trade Practices Act and Racketeer Influenced and Corrupt Organization Act, all based on allegations that Walgreens historically, among other acts, distributed and dispensed prescription opioid pain medication improperly in a fashion that has caused harm to the health of Florida residents and to the State."** The Florida AG litigation resulted in the following:

i. On May 04, 2022, the Florida AG Action was settled for six hundred eighty-three million dollars ($683,000,000) plus an addition thirty-four million dollars ($34,000,000) to cover the Florida Attorney General litigation costs.

ii. Defendant Georgia was deposed in the Florida AG Action regarding, *inter alia,*

1. Her being responsible for the profitability of her regions which included all south Florida and the Tampa area.

2. She was aware of Walgreens record keeping requirements on all levels for her assigned regions.

3. She was aware via emails she was copied on that Walgreens in-house counsel suggested not keep records about the opioid epidemic that it was required to keep.

4. She was aware via emails she was copied on that Walgreens records/evidence was destroyed.

iii. On January 15, 2019, Walgreens settled claims brought by the United States, 39 states, and the District of Columbia alleging that, from January 2008 through December 2017, Walgreens violated the False Claims Act, 31 U.S.C. § 3729 *et seq.,* by submitting *false* usual and customary ("U&C") prices that were higher than the prices it charged for the same drugs sold through its Prescription Savings Club cash discount program ("PSC Program"), thereby obtaining more money in reimbursements for Medicaid fee-for-service claims than it was entitled to receive. Walgreens admitted—for the first time—that "in submitting claims for reimbursement," Walgreens "did not identify its PSC program prices as its U&C prices for drugs on the PSC program formulary," despite being so required. Walgreens further admitted—for the first time—facts demonstrating that the PSC Program itself was a sham, including that it "offered a savings guarantee pursuant to which PSC program members could recoup (in the form of store credit) the difference between the amount they paid to enroll in the program in a given year and the amount

they received in discounted savings under the program in that year." *These settled False Claims Act lawsuits included the destruction of records/evidence by Walgreens.*

3) Here, every Walgreens store is reviewed monthly on its profitability and 50% of each store's profitability review pertains to how low it keeps its payroll. If a store fails to satisfy its profitability requirements, the store manager will not receive a raise or performance-based incentives. If enough stores fail to meet their respective profitability goals, it will negatively affect the compensation of executives like Defendants Georgia and Santiago.

4) As a result, Walgreens sought to increase profitability at the store level by relying on its tried-and-true modus operandi: manipulating (and even destroying) employee time records for the purpose of reducing payroll expenditures by, *inter alia*:

   a. Avoiding overtime payments.

   b. Not compensating Medication Therapy Management ("MTM") employees for all hours worked by forcing MTM employees to work off the clock before and after shifts.

   c. Misclassifying employees to pay them lower rates of pay.

## JURISDICTION & VENUE

5) This is an action to recover money damages for an amount in excess of Five Hundred Thousand Dollars ($500,000.00) for: a) unpaid minimum and overtime wages under both federal and Florida state law; b) unlawful retaliation / wrongful termination under the FLSA and the FMWA; and c) defamation under Florida law.

6) Plaintiffs bring this action on behalf of themselves, and all others similarly situated to redress the Employer's *willful and intentional* violations of the FLSA and the FMWA by failing to pay all due and owing minimum wages, overtime wages as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under all available legal authorities and specifically under the provisions of 29 U.S.C. §§ 206, 207, 216, and Fla. Stat. 448.10, Fla. Const. Art. 10 § 24.

7) This Court has proper jurisdiction and venue for Plaintiffs' FLSA collective action pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be

maintained against any employer ... in any Federal or State court of competent jurisdiction."

8) All Individual Defendants (Francois, Santiago, and Georgia) both jointly and severally satisfy the definition of "employer," under 29 U.S.C. § 203(d), as each has operational control over the Corporate Defendants and are directly involved in decisions affecting employee compensation and hours worked by employees such as Plaintiffs and all others similarly situated. Moreover, they controlled the purse strings for the Corporate Defendants.

9) This Court has personal jurisdiction over Defendants Walgreen, WBA and WM because they maintain offices in the State of Florida. The Corporate Defendants at all times material hereto were doing business within the jurisdiction of this Court, where Plaintiffs were employed, and at all times material hereto were and are engaged in interstate commerce. The Individual Defendants are residents of Broward County, Florida.

10) The Corporate Defendants at all times material hereto were doing business within the jurisdiction of this Court, where Plaintiffs were employed, and at all times material hereto were and are engaged in interstate commerce.

11) The Employer is and, at all times pertinent to this Complaint, was engaged in interstate commerce. At all times pertinent to this Complaint, the Employer operates as an organization which sells and/or markets and/or handles its services and/or goods and/or materials to customers from throughout the United States and also provides its services for goods and/or materials sold and transported from across State lines of numerous other States, and the Employer obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over State lines to do its business, transmits funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees. Upon information and belief, the annual gross revenue of the Employer was at all times material hereto in excess of $500,000.00 per annum, and/or Plaintiffs, by virtue of working in interstate commerce, otherwise satisfy the FLSA's requirements. 29 U.S.C. §203(r) and 203(s).

12) All Defendants jointly employed Plaintiffs, and all others similarly situated, as "Joint Employers" under 29 C.F.R. § 791.2.

## PARTIES

13) **Plaintiff, Concepcion Duran** at all times material hereto lived and still lives in Broward County, Florida and was employed by Defendants as a Pharmacy Operations Manager at all relevant periods.

a. **Pharmacy Operations Manager:** Duran was responsible for supporting pharmacists in patient care, including patient registration, prescription data entry, and medication preparation. She oversaw the daily pharmacy operations by delegating non-clinical tasks, ensuring efficient workflow, and maintaining the pharmacy's cleanliness and stock levels. Additionally, she assisted in administering healthcare services like vaccines and health screenings, manages pharmacy inventory, ensures compliance with company policies and regulations, and participates in key store/pharmacy meetings, including meetings and weekly check-ins with the Store Manager. Duran also supports financial analysis, customer service improvement, and coordinates community outreach activities, fostering relationships with retail partners and organizing off-site immunization clinics.

b. **Duran's Wage & Hour Allegations:** Duran's rate of pay was Duran's rate of pay was $26.50 per hour. Duran worked in store 4803 at 1105 Sterling Road, Cooper City, Florida 33328 and she was paid in violation of the FLSA and the FMWA. More specifically, Duran was required to provide COVID vaccines on various cruise ships and at other locations during the pandemic in 2021 and 2022. Duran would record her time on a note pad every day while on cruise ship duty. At the end of each day, Duran was required to give her recorded time to Defendant Francois who was required to accurately record Duran's time in Walgreens' payroll system. However, Francois input Duran's time into weeks where her hours worked would not result in overtime payments.

c. **Representative Allegations:** Upon information and belief, Employer systematically manipulated all manually recorded time by similarly situated employees that were required to work off-site to administer vaccines or for other reasons.

14) **Plaintiff, Alden Brutus** at all times material hereto lived and lives in Broward County Florida and was employed by Defendants during all material periods as both a Pharm Tech Apprentice and Designated Hitter and worked in Store # 4803 at 1105 Sterling Road, Cooper City, Florida 33328 and MTM located 11650 Miramar Parkway, Suite 101, Miramar, Florida 33025 his rate of pay for work at the store was $15 per hour and work at the MTM was also $15 per hour. Brutus was paid in violation of the FLSA and the FMWA.

   a. **Pharm Tech Apprenticeship**: Brutus assists with pharmacy operations by entering patient and drug information, filling prescriptions, and verifying medications for accuracy and potential interactions. He ensures adherence to Walgreens' policies, handles cash register transactions, manages inventory, and processes manual claims for third-party prescription services. Brutus may also help with clinical services, such as collecting and labelling patient samples, and supports the pharmacy's relationships with the local medical community. He maintains the pharmacy's cleanliness and organization, complies with company policies, and completes special assignments as needed.

   b. **Designated Hitter**: maintaining the cleanliness and organization of store displays, inventory management, and entering patient and drug information into pharmacy systems under the supervision of the pharmacy staff. The role also involves managing phone calls, processing manual claims, and ensuring compliance with Walgreens' policies and state and local laws regarding regulated products. Additional duties include assisting with store maintenance, providing customer service in the photo area, managing web order pick-ups, handling transactions, processing returns and exchanges. and completing special assignments as needed.

   c. **Brutus Wage & Hour Allegations**: Brutus' rate of pay was $15 per hour. Because Brutus was misclassified he was not properly paid as a pharmacy tech in training and when he had sufficient training to be licensed, he did not promptly become licensed. As a result his pay was diminished.

15) Defendant **Georgia** was a Regional Healthcare Director of Walgreens at its 11650 Miramar Parkway, Suite 101, Miramar, Florida 33025 location which is within the jurisdiction of this Court.

a. **Regional Healthcare Director:** Responsible for strategic planning to increase profits and sales across 570 stores, including 21 specialty pharmacies. Instrumental in driving Walgreens' success by leading initiatives that enhance sales, profitability, and service delivery, ensuring that the organization remains a leader in the healthcare and retail industries. Evaluate each district's profitability, payroll management and sales. Work closely with districts and stores to guarantee effective payroll management and pharmaceutical sales. Roll out new programs and initiatives to increase regions profitability. Work closely with corporate and regional leadership to plan, execute and lead integration with sales team and pharmacy offerings.

b. **FLSA Employer Allegations:** Georgia has actively supervised and directed employment practices and has acted directly or indirectly in the interest of Walgreens in relation to its employees at all times relevant herein. Georgia is and has been responsible for the day-to-day operations of Walgreens. Georgia has at all times pertinent hereto hired and fired employees, and has shared control with other executives and managers over the compensation policies and practices of Walgreens. At all relevant times with respect to the Plaintiffs and all others similarly situated, Defendant Georgia was (and is) an Employer as defined by both the FLSA and FMWA.

c. **Georgia Willful & Intentional Violations of the FLSA & FMWA:** Georgia directly encouraged, supervised, tracked and rewarded Walgreens management employees working under her to reduce amounts paid to employees including Duran, Brutus and others similarly situated and thereby increase profits, all in violation of the FLSA and FMWA.

16) **Defendant, Santiago** was a Regional Vice President of Walgreens resident at its 11650 Miramar Parkway, Suite 101, Miramar, Florida 33025 location which is within the jurisdiction of this Court.

a. **Regional Operations Vice President:** Develop and execute strategies to achieve sales and profitability objectives. Leverage expertise in pharmacy and retail management to drive revenue growth through improved sales and cost management. Work closely with corporate and regional leadership to align regional strategies with organizational goals, ensuring Walgreens remains at the forefront of the healthcare and retail industries. Provide leadership and coaching to District Manager, Pharmacy Operations Managers and Store Managers, equipping them with the skills and knowledge needed to deliver exceptional service and meet customer needs. Collaborate with District Managers to optimize inventory management, patient care services, merchandising, and compliance with regulations, contributing to the overall sales and profitability of each store.

b. **FLSA Employer Allegations:** Santiago has actively supervised and directed employment practices and has acted directly or indirectly in the interest of Walgreens in relation to its employees at all times relevant herein. Santiago is and has been responsible for the day-to-day operations of Walgreens. Santiago has at all times pertinent hereto hired and fired employees and has shared control with other executives and managers over the compensation policies and practices of Walgreens. At all relevant times with respect to the Plaintiffs and all others similarly situated, Defendant Santiago was (and is) an Employer as defined by both the FLSA and FMWA.

c. **Santiago Willful & Intentional Violations of the FLSA & FMWA:** Santiago worked in concert with Georgia and directly encouraged, supervised, tracked and rewarded Walgreens management employees working under her to reduce amounts paid to employees including Duran, Brutus and others similarly situated and thereby increase profits, all in violation of the FLSA and FMWA.

17) **Defendant Francois** was a Store Manager resident at its 1105 Sterling Road, Cooper City, Florida 33328 Store #4803 location which is within the jurisdiction of this Court.

a. **Store Manager:** Supervises the daily operations of the store and pharmacy, including opening and closing procedures, task delegation, managing payroll; uploading employee hours; hiring, onboarding and scheduling retail and pharmaceutical staff. Attend weekly meetings with pharmacy operations manager

focused on improving sales, subscriptions, assisting pharmacy operations manager with coordinating community outreach activities and helping organize off-site immunization clinics to enhance pharmacy performance ensuring quotas are met. Work with asset protection, review data to develop strategies to reduce loss and theft. Report store profitability, payroll management and sales to District Manager during "Monthly Business Reviews". Work with District Manager to roll out new programs and initiatives developed by corporate and regional leadership.

b. **FLSA Employer Allegations:** Francois has actively supervised and directed employment practices and has acted directly or indirectly in the interest of Walgreens in relation to its employees at all times relevant herein. Francois is and has been responsible for the day-to-day operations of Walgreens. Francois has at all times pertinent hereto hired and fired employees, and has shared control with other executives and managers over the compensation policies and practices of Walgreens. At all relevant times with respect to the Plaintiffs and all others similarly situated, Defendant Francois was (and is) an Employer as defined by both the FLSA and FMWA.

c. **Francois Willful & Intentional Violations of the FLSA & FMWA:** Under Georgia's direct supervision, Francois encouraged, supervised, tracked and rewarded by Walgreens to reduce amounts paid to employees including Duran, Brutus and others similarly situated and thereby increase profits, all in violation of the FLSA and FMWA.

18) **Defendant, Walgreen** is an Illinois corporation that maintains its corporate headquarters at 200 Wilmot Road in Deerfield, Illinois 60015. Until December 31, 2014, Walgreen Co. had no corporate parent. On December 31, 2014, Walgreen Co. became a wholly-owned subsidiary of Defendant Walgreens Boots Alliance, Inc. pursuant to a merger to effect a reorganization of Walgreen Co. into a holding company structure ("Reorganization"), with Walgreens Boots Alliance, Inc. becoming the parent holding company. At all relevant times with respect to the Plaintiffs and all others similarly situated, Defendant Walgreen was (and is) an Employer as defined by both the FLSA and FMWA.

19) **Defendant, WBA** is a Delaware corporation with its principal place of business and corporate headquarters at 108 Wilmot Road in Deerfield, Illinois 60015. On December

31, 2014, WBA became the successor of Walgreen, pursuant to the Reorganization, with WBA becoming the direct parent holding company and Walgreen becoming a wholly-owned subsidiary of WBA. At all relevant times with respect to the Plaintiffs and all others similarly situated, Defendant WBA was (and is) an Employer as defined by both the FLSA and FMWA.

20) **Defendant, WM** is an Illinois limited liability corporation with its principal place for business and headquarters at 108 Wilmont Road in Deerfield, Illinois 60015. At all material times with respect to the Plaintiffs and all others similarly situated, Defendant WM was (and is) an employer as defined by both the FLSA and FMWA.

21) At all relevant times, Defendants Walgreen, WBA and WM jointly employed the Plaintiffs and all others similarly situated under both the FLSA and FMWA.

22) At all relevant times, all Defendants jointly employed the Plaintiffs and all others similarly situated under both the FLSA and FMWA.

23) All WBA profits are derived from its wholly-owned operating subsidiaries, including Walgreen and WM. Because of their integrated operations, Walgreen Co. and WBA are referred to herein as "Walgreens."

24) During the course of the events alleged in this action, Walgreens operated under the trade name "Walgreens" or through various Walgreens-affiliated store banners across the United States, including but not limited to: Duane Reade, Kerr Drug, Super D Drug, USA Drug, Happy Harry's, Med-X Drug, May's Drug, and Drug Warehouse (collectively, "Walgreens- affiliated banners").

25) Walgreens is the largest retail drugstore chain in the United States based on both revenues and number of stores. Walgreens operates 9,277 retail pharmacies in all fifty states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands, including 154 drugstores in the state of Alabama, *820 drugstores in the state of Florida*, 72 drugstores in the state of Iowa, 71 drugstores in the state of Kansas, 258 drugstores in the commonwealth of Massachusetts, 153 drugstores in the state of Minnesota, 57 drugstores in the state of Nebraska, 362 drugstores in the state of North Carolina, 1 drugstore in the state of North Dakota, 14 drugstores in the state of South Dakota, and 583 drugstores in the state of Illinois.

26) In September 2017, Walgreens announced that it had secured regulatory clearance to purchase 1,932 Rite Aid pharmacy stores "located primarily in the Northeast and Southern U.S." for approximately $4.2 billion. By March 27, 2018, Rite Aid completed the transfer of all 1,932 stores to Walgreens, and Walgreens now publicly identifies those locations as "Walgreens-owned Rite Aid stores."

## COUNT I
## RECOVERY OF MINIMUM WAGE
## AGAINST THE EMPLOYER

27) Plaintiffs re-allege and re-aver paragraphs 1 through 26 as though as fully set forth herein.

28) The Florida minimum wage is interpreted in accordance with the FLSA. F.S.A. § 448.110; F.S.A.

29) At this time, Plaintiffs have limited time and payroll records. Accordingly, Plaintiffs estimate their damages and reserve the right to amend the calculations. The calculations herein are estimates. The amount of Plaintiffs' minimum wage damages will fluctuate once calculations are made week by week based on the time and payroll records. See *Anderson v. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S.Ct. 1187, 1192-93 (1946). Plaintiffs also intend to prove that they are entitled to liquidated damages pursuant to 29 U.S.C.§ 216(b).

30) Defendants willfully and intentionally failed to pay Plaintiffs the statutory minimum wage as required by the laws of the United States as set forth above and remain owing them back wages. Defendants knew and/or showed reckless disregard of the provisions of the FLSA concerning the payment of unpaid minimum wages as required by the Fair Labor Standards Act. Defendants had knowledge of Plaintiffs' work schedule and the amount of hours they worked. Defendants knew or should have known of the work performed by Plaintiffs and of their obligation to pay minimum wages to Plaintiffs. Defendants willfully and intentionally deducted three dollars from Plaintiffs' hourly rate and failed to pay their minimum wages.

31) As a result of the under-payments of wages alleged above, Defendants are indebted to Plaintiffs in the amount of the unpaid minimum wage compensation, and an amount equal to the unpaid minimum wages as liquidated damages. Plaintiffs propose to obtain

the necessary records and information to determine the amount of the under-payment to Plaintiffs to be promptly taken in this cause.

32) At this time, Plaintiffs have limited time and payroll records. Accordingly, Plaintiffs estimate their damages and reserve the right to amend the calculations. The calculations herein are estimates. The amount of Plaintiffs' minimum wage damages will fluctuate once calculations are made week by week based on the time and payroll records. Plaintiffs also intend to prove that they are entitled to liquidated damages

33) Plaintiffs bring these claims on their own behalf and on behalf of those who are similarly situated.

34) Plaintiffs have retained the undersigned attorneys to represent them in this action and are obligated to pay a reasonable attorney's fee.

**WHEREFORE**, Plaintiffs, on their own behalf and on behalf of those similarly situated, request compensatory and liquidated damages and reasonable attorney's fees from all Defendants, jointly and severally, pursuant to the Fair Labor Standards Act, Fla. Stat. §448.110, and the Florida Constitution as cited above, to be proven at the time of trial for unpaid minimum wages owing from Plaintiffs' entire employment period with Defendants, or as much as allowed by the Fair Labor Standards Act, whichever is greater, along with court costs. In the event that Plaintiffs do not recover liquidated damages, then Plaintiffs seek an award of prejudgment interest for the unpaid minimum wages, and any and all other relief which this Court deems reasonable under the circumstances.

<u>COUNT II</u>
<u>RECOVERY OF DAMAGES</u>
<u>FOR WRONGFUL RETALIATION</u>

35) Plaintiffs re-allege and re-aver paragraphs 1 through 26 and 29 through 34 as though as fully set forth herein.

36) Plaintiffs performed their job responsibilities with integrity and consistency. Plaintiffs refused to engage in improper activity that was suggested to them by their superiors.

37) Specifically, plaintiff Duran was directed to ignore issues of impropriety relating to the storage and distribution of opioids. As a result, defendant Francois targeted Duran with an investigation wherein Duran was wrongfully accused of taking an amount of opioids, which was absolutely false. An investigation was performed and cleared Duran.

38) Later when Walgreens was attempting to wrongfully terminate managerial employee Alie Darbouze, Walgreens employees created a false narrative relating to the employment of Brutus. Duran had supervised Brutus in his position, including direct training, tutorials and applications to become certified as a pharmacy tech. However, Francois had misclassified Brutus when he was first employed to work in Francois' Store, and Brutus was instead classified as a cashier and not a pharmacy tech in training period as a result, notifications of certain trainings and examinations for licensure as a pharmacy tech were not received because the process is automated by Walgreens and the misclassification caused the correct modules of training to not be issued.

39) When Duran learned of the lack of trainings, testing and licensure, she immediately took steps to fix the problem and assist Brutus in becoming properly certified. This did not fit the narrative Walgreens executives wanted to create and they improperly retaliated against Duran and Brutus. As a result, Duran and Brutus were mistreated and ultimately their employment with Walgreens was terminated.

40) Defendants Georgia and Santiago were directly involved with planning this chain of events and were complicit in the wrongful retaliation.

41) Plaintiff suffered damage as a direct and proximate result of this wrongful activity in the form of lost wages, loss of employment, loss of reputation, mental anguish and emotional damage.

WHEREFORE, Plaintiffs request compensatory, economic and liquidated damages and reasonable attorney's fees from all Defendants, jointly and severally, pursuant to the FLSA and the FMWA with amounts to be proven at the time of trial, along with court costs and any and all other relief which this Court deems just and equitable.

## COUNT III
### RECOVERY OF DAMAGES FOR DEFAMATION

42) Plaintiffs re-allege and re-aver paragraphs 1 through 26 29 through 32 and 36 through 41 as though as fully set forth herein.

43) Defendants made false statements about Plaintiffs in connection with their wrongful investigations and efforts to cover up their mistaken and wrongful activity.

44) The false statements made by Defendants about Plaintiffs were defamatory.

45) All statements made by Defendants about Plaintiffs were published to other employees within Walgreens

46) Defendants knew or recklessly disregarded the falsity of the statements and the intentions of the people making the false statements to wrongfully damage the reputation, employment and careers of Plaintiffs. Defendants wrongful actions toward plaintiffs were intentional and recklessly disregarded the consequences that Plaintiffs would suffer.

47) Plaintiffs suffered actual damages as they were terminated from their employment, their careers were destroyed, their reputations were severely damaged or destroyed within the Walgreens companies, among current and former Walgreens employees and in the pharmaceutical community of South Florida and they suffered humiliation and mental anguish.

WHEREFORE, Plaintiffs request compensatory and economic damages from all Defendants, Jointly and Severally, along with an award of court costs any and all other relief which this Court deems just and equitable.

## JURY DEMAND

Plaintiffs demand trial by jury of all issues triable as of right by a jury.

**DATED** this 17th day of October, 2024.

SWEETAPPLE, BROEKER & VARKAS, P. L.
12700 Biscayne Blvd Ste 402
Miami, FL 33181-2024
doug@broekerlaw.com
Phone: 305-374-5623

/s/ Douglas C. Broeker
**DOUGLAS C. BROEKER, ESQ.**
Florida Bar No. 306738

DEVAND A. SUKHDEO, ESQ.
1305 Anhinga Dr
Wellington, FL 33414-5056
dev@sukhdeo.net
Phone: 305-586-7177

/s/ Devand A. Sukhdeo
**DEVAND A. SUKHDEO, ESQ.**

Florida Bar No. 126977